IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PATRICK ROAN,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    Case No. 3:18-cv-01342<br>)    Judge Richardson / Frensley |
| ALLIED UNIVERSAL, et al.,<br>    Defendants. | )<br>) |

## REPORT AND RECOMMENDATION

### I.
### INTRODUCTION AND BACKGROUND

This matter is before the Court upon a Motion for Summary Judgment filed by Defendant Allied Universal ("Defendant").[1] Docket No. 24. Along with its Motion, Defendant has contemporaneously filed a supporting Memorandum of Law (Docket No. 24-1), Plaintiff's Deposition Transcript ("Plaintiff's Dep.") (Docket No. 24-2), the Declaration of Alicia Bennett ("Bennet Dec.") (Docket No. 24-3); Plaintiff's September 8, 2015 Bankruptcy Petition for *In re Roan*, Ch. 13 Case No. 3:15-bk-02333 (Docket No. 24-4); and Plaintiff's May 14, 2019 Bankruptcy Petition for *In re Roan*, Ch. 13 Case No. 3:15-cv-bk-04354 (Docket No. 24-5). Defendant has additionally filed a Statement of Undisputed Material Facts. Docket No. 31.

As grounds for its Motion, Defendant argues that there is no genuine dispute of material fact and it is entitled to a judgment as a matter of law on Plaintiff's race and sex discrimination

---

[1] Although Alicia Bennett and Mark Texiera are also named Defendants, they have not been served. Additionally, because Plaintiff filed this action claiming violation of race and sex discrimination under Title VII of the Civil Rights Act of 1964 and sex discrimination under the Equal Pay Act, those claims are properly brought against employers, not individuals. Accordingly, neither Alicia Bennett nor Mark Texiera are appropriate Defendants in this action; the proper Defendant in this matter is Allied Universal.

1

claims under Title VII of the Civil Rights Act of 1964 and sex discrimination claim under the Equal Pay Act because it is undisputed that Plaintiff was not treated differently than a similarly-situated coworker outside of his protected class and Plaintiff cannot establish that Defendant's proffered reason for its action is pretextual. Docket No. 24. Defendant also argues that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law on Plaintiff's retaliation claim because he cannot show that he suffered an adverse employment action and Plaintiff cannot establish that the challenged actions were pretexts for unlawful retaliation. *Id.*

Plaintiff has filed a Response in Opposition to Defendant's Motion, which states that he was not aware of Defendant's filings because he has not received any certified mail from Defendant notifying him of those filings. Docket No. 34. In his Response, Plaintiff also states that he has "no knowledge of what's being filed" and therefore is "not able to respond if Defendant's are [*sic*] note being true to the Court's on filing motions." *Id.*

In addition to his Response in Opposition to the Motion, Plaintiff has additionally filed a document entitled "Filing Motion Boilerplate Objections," which states in its entirety:

> And "Good Faith". Defendant Allied Universal's Memorandum In Support of It's Motion for Summary Judgement to be Dismissed [*sic*]. Defendant has failed to meet "Good Faith" requirement's [*sic*]. Defendant went as far as to use the Deposition taken on August 20, 2019 at 9:00 am. This is related to what they think or thought in discovery matter's [*sic*]. We talked about my Chapter 13 which has been paid in full. Defendant's [*sic*] talked about my other civil cases filed with the United States District Court for the Middle District of Tennessee. One thing that Defendant has failed to show that I Plaintiff was "given" a prior notification about my pay cut, after making $12.00 a hour for all most [*sic*] a full year. Deposition taken on August 20, 2019 was supposed to be used at trial, not for Summary Judgement [*sic*]. Judge and Magistrate, Defendant's has [*sic*] showed the District Court for the Middle District of Tennessee anything besides looking up my credit history, and seeing other civil cases filed. I Plaintiff would like to ask the Courts for Summary Judgement [*sic*] because Defendant's [sic] didn't show "good" cause.

Docket No. 25.

Plaintiff has also filed a document entitled "Motion Boilerplate Objection 'Good Faith,'" which states in its entirety as follows:

> Responding to Alicia Bennett Declaration. And Transcript of I Plaintiff Patrick Roan deposition. I have documents to provide. and asking for Summary Judgement [*sic*] for Discrimation [*sic*]. My documents are Exhibits 1-20. Also I would like to say that Alicia Bennett never responded to my phone call's [*sic*]. Alicia Bennett never sent no document's [*sic*] to show were [*sic*] my pay rate was gonna be cut. I served as Security Officer for two year's [*sic*] with no problem's [*sic*], came to work when needed and stayed when needed. I only knew Mr. Remus and Mark until they both left the company. I couldn't even tell you what Alicia Bennett look like. My Document's [*sic*] are "true" and faithful to the court's [*sic*].

Docket No. 26.

Plaintiff has additionally filed a document entitled "Motion Boilerplate Objections and" which states in its entirety:

> "Good Faith" responding to Declaration of Alicia Bennett, Defendant's Motion for Summary Judgement [*sic*]. I have provided Documents and Exhibits. Allied should be able to show the Court's [*sic*] Documents where Ms. Boyd worked truck gate at $12.00 a hour and sometimes front desk at $12.00 a hour. All employees had to fill out "their" own time sheets.

Docket No. 27.

Finally, Plaintiff has filed a document entitled "Boilerplate objections and good faith" with 11 Exhibits which state as follows:

> Boilerplate objections and good faith on Statement of Material Facts that Defendant did not file on December 16, 2019 with their Summary Judgement [*sic*] Motion. I have given facts and document's [*sic*] on Material Facts. We talked about all this in my "Deposition". Plaintiff asking for Summary Judgement [*sic*].
>
> **Exhibit 1 – Response 1-31**
> Allied "never" gave me a Reduction Letter. Transcript 142 & 143 shows where I stated it. Transcript 169 & 170 also shows "No" one talked to I Plaintiff of any type of pay cut. "A surprise pay cut is 'Illegal'."
>
> **Exhibit 2 – Response 32-36**
> Mr. Bobby Young did say that Sunday, that he was sorry for Saturday. There was

3

"No" man with a beer bottle. This was I felt a retaliation because I told Alicia about him telling the workplace about my complaint with the The Human Rights [*sic*].

**Exhibit 3 – Response 37-39**
I called out on Saturday 5-12-2018 at 7:30 pm for Sunday. Ms. Alicia text I Plaintiff back at 12 noon on 5-13-2018 then she called Mr. Bobby on three way. Mr. Bobby covered my shift on Sunday 5-13-2018 he said that it wasn't no "Problem". Documents that he covered my shift.

**Exhibit 4 – 40-43 Response**
No employee worked my shift on Sunday. Mr. Bobby covered it. Documents show I came in and worked on Wednesday for retaliation. Document. 5-16-2018 for calling out on 5-13-2018.

**Exhibit 5 – Response 45-46**
There wasn't enough employee's [*sic*] to call. That is where the Flex Officers would have to step in.

**Exhibit 6 – Response 47-48**
Defendant isn't telling the truth. Matt Kendrick was going through a difficult time with his Ex-wife. He finally was able to get to see his little girl for two days out of the week, order by the Judge. We had a lot of call out's and "No" Flex Officer's work. So Ms. Alicia call and told Matt to take his little girl to her "momma" and get to work. She didn't' care about no "order." Matt came to work very upset.

**Exhibit 7 – Response 49-51**
I Plaintiff have filed lawsuits claims but I have also had my Right to Sue papers also. Dear Court's [*sic*] No I Plaintiff don't have a law suit pending on with Trac.

**Exhibit 8 – Response 52-55**
I Plaintiff hasn't filed bankruptcy 5 times. My chapter 13 was on suspended payment's [*sic*] for about 5 months, because I lost my Job in September 2015 that was taken out 378.66 bi-weekly. The courts then stacked taken [*sic*] several months later $92.28 weekly out of my UPS check that is why my chapter 13 papers has to [*sic*] different case numbers. Same case just different pay plans. My account was paid in full.

**Exhibit 9 – Response 56-60**
Ms. Boyd wasn't a Flex Officer. Transcript 157-161.

**Exhibit 10 – Response 61**
Defendant's [*sic*] "Now" saying that Ms. Boyd made herself "Ineligible" for a Flex Officer. "Ineligible" means legally or officially unable to be considered for a position or benefit. "Ineligible" means that you can't enter or participate in something. So they allowed Ms. Boyd to stay at $12.00 a hour, until I filed my

4

complaint then took it away for three weeks then transfered [*sic*] Ms. Boyd to a different site making $13.00 dollars a hour. This is discrimination. Took Plaintiff's pay of $12.00 away to $10.25 $10.50 a hour without a "Notice of pay reduction", but you paid female Ms. Boyd that you say "Ineligible" for Flex Officer $12.00 Dollars a hour.

**Exhibit 11**
Dear Court's [*sic*], Defendant's [*sic*] fail to tell that even after taking away my $12.00 a hour without no notice of pay reduction. Check dates 12-22-2017 – 12-28-2017 my pay was "manually" being taking out. I wasn't no Flex Officer. Even happened on check 2-02-2018 – 2-08-2018 and I was no Flex Officer and never received a Notice of pay reduction. This is "Illegal".

Docket No. 29 – 29-11.

Plaintiff filed his Complaint in this action on December 4, 2018 alleging that, on or about December 14, 2017, Defendant discriminated against him on account of his race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* and the Equal Pay Act, 29 U.S.C. § 206(d), and also retaliated against him for filing his charge of discrimination. Docket No. 1. [2] Plaintiff filed his Charge of Discrimination on or about January 2, 2018, and he received his Right to Sue Letter on November 8, 2018. *Id.* The allegations of Plaintiff's Complaint, in their entirety, are:

> I was faced with the Equal Pay Act. I was treated different from a Female Employee. Also Allied took away my pay rate twice, without a Salary Reduction Letter. Mrs. Boyd and I Plaintiff worked in the same place – doing equal work – and being paid unequal pay. I'm asking for the amount in damages because Pay was just taking [*sic*] away. No notice, treated different because of sex – cause [*sic*] a lot of stress and never got any answers from Allied on pay rates. Breach of contract never show where pay is $10.25 a hour. Mrs. Boyd was offered a higher paying job. Why I Plaintiff wasn't.

*Id.* Plaintiff seeks "wages lost," "compensation for pain and suffering," "compensatory damages," "breach of contract," and $100,000 in punitive damages. *Id.*

For the reasons set forth below, the undersigned finds that there are no genuine issues of

---

[2] Along with his Complaint, Plaintiff contemporaneously filed a copy of his Right to Sue letter from the EEOC. Docket No. 1-1.

material fact and that Defendant is entitled to a judgment as a matter of law on Plaintiff's claims under Title VII and the Equal Pay Act. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 24) be GRANTED. The undersigned also notes that although Plaintiff titles Docket Numbers 25, 26, and 27 as Motions, they are in fact responses. Accordingly, to the extent that any recommendation is necessary thereon, the undersigned recommends that those "Motions" (Docket Nos. 25, 26, 27) be DENIED. In light of the foregoing, the undersigned recommends that this action be DISMISSED WITH PREJUDICE.

## II.
## UNDISPUTED FACTS[3]

Allied Universal is a nationwide organization that provides security guard services to customers at their place of operations. Bennett Dec., ¶ 4; Plaintiff's Dep. at 70. Allied does not have one particular wage rate that it pays to all of its employees. Bennett Dec., ¶ 4; Plaintiff's Dep. at 71. Wages are instead determined on a site-by-site basis as set forth in the applicable service contract between Allied and its customers. Bennett Dec., ¶ 4; Plaintiff's Dep. at 72.

From time to time, a customer decides to discontinue its relationship with Allied. Bennett Dec., ¶ 5; Plaintiff's Dep. at 120. When that happens, Allied typically attempts to find a new account for the employees who were assigned to that customer and wish to remain employed with the Company. Bennett Dec., ¶ 5; Plaintiff's Dep. at 122.

Employees are told at the time of hire that their wage rates are subject to change at new assignments. Bennett Dec., ¶ 6; Plaintiff's Dep. at 97, Ex. 13 – Employee Handbook at Bates Stamp ALLIED 1123. If an employee is reassigned to a site with lower pay following the loss of a customer, Allied will sometimes continue to pay that employee his or her wage rate from the previous site for a limited period of time. Bennett Dec., ¶ 6; Plaintiff's Dep. at 123-124. This is

---

[3] The following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed.

called paying "out of profile." *Id.* When Allied pays an employee out of profile, it generally cannot recover the additional wages from its customer. Bennett Dec., ¶ 7; Plaintiff's Dep. at 74. As a result, paying "out of profile" wages hurts the company's profit margin. Bennett Dec., ¶ 7.

Most of the security guards providing services for Allied have the job title of Security Professionals and are assigned to specific client locations. Bennett Dec., ¶ 8; Plaintiff's Dep., 136-137. In addition to these Security Professionals, the company also utilizes Flex Officers who do not have set client assignments or schedules. Bennett Dec., ¶ 8; Plaintiff's Dep. at 137-138. Flex Officers can be assigned to various client locations as needed to help Allied fulfill its contractual obligations. *Id.* Due to the disadvantages of being a Flex Officer, Allied generally pays Flex Officers a higher wage rate than it pays to regular Security Professionals. Bennett Dec., ¶ 8; Plaintiff's Dep. at 139.

For example, at the Tyson Foods facility in Goodlettsville, Tennessee, Security Professionals received an hourly wage rate of $10.25 or $10.50 (depending on their particular assignment), and Flex Officers received an hourly wage rate of $12.00. Bennett Dec., ¶ 8; Plaintiff's Dep. at 129-130, 139. Specifically, Security Professionals working at the front desk or on product protection earned $10.25 per hour, and Security Professionals working at the truck gate earned $10.50 per hour. *Id.*

Allied hired Plaintiff in February 2016 and assigned him to work as a Security Professional at Vanderbilt University. Plaintiff's Dep. at 96. Subsequently, Allied transferred Plaintiff to Tennessee State University, where he received a wage rate of $12.00 per hour. Bennett Dec., ¶ 9; Plaintiff's Dep. at 110. Effective January 1, 2017, Allied lost the contract to perform security services at Tennessee State University. Bennett Dec., ¶ 9; Plaintiff's Dep. at 72. Following the loss of its Tennessee State University account, Allied transferred Plaintiff and

several other Security Professionals who worked on that account to a Tyson Foods location in Goodlettsville, Tennessee. Bennett Dec., ¶ 9; Plaintiff's Dep. at 122. As stated above, Security Professionals at Tyson Foods earned an hourly rate of either $10.25 or $10.50, depending on their particular assignment. Bennett Dec., ¶ 10; Plaintiff's Dep. at 133.

Nevertheless, Allied continued to pay Plaintiff and the other Security Professionals who transferred from Tennessee State University the $12.00 per hour wage rate that they had received at Tennessee State University. Bennett Dec., ¶ 10; Plaintiff's Dep. at 123. Tyson Foods paid Allied the same amount for services provided at the site, regardless of the wage rate that Allied paid its employees. Bennett Dec., ¶ 11; Plaintiff's Dep. at 74. Accordingly, Allied suffered a loss in its profit margin for every hour worked by Plaintiff (and the other Security Professionals who transferred from Tennessee State University) rather than an employee earning the "in-profile" wage rate for the site. Bennett Dec., ¶ 11.

In late 2017, Allied alerted its Operations manager responsible for Tyson Foods, Alicia Bennett, that DOMO identified three Security Professionals assigned to the Tyson Foods site in Goodlettsville who were being paid "out of profile": Plaintiff (an African-American male), Angela Owens (an African-American female), and Mary McKnight (a Caucasian female). Bennett Dec., ¶ 12; Plaintiff Dep. at 143. Allied instructed Ms. Bennett to lower the pay of these three Security Professionals to match the wage rate paid to other Security Professionals at the site. Bennett Dec., ¶ 12; Plaintiff's Dep. at 143. Per those instructions, Ms. Bennett lowered the wage rate of Plaintiff, Ms. Owens, and Ms. McKnight to the same pay rate being paid to other Security Professionals at the site. Bennett Dec., ¶ 13; Plaintiff's Dep. at 130.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and Tennessee Human Rights Commission regarding this reduction in his pay.

8

Case 3:18-cv-01342   Document 35   Filed 04/02/20   Page 8 of 20 PageID #: 1431

Bennett Dec., ¶ 14; Plaintiff's Dep. at 144. Neither Ms. Owens nor Ms. McKnight filed a charge related to their identical decrease in pay. Bennett Dec., ¶ 14.

Several days after Plaintiff filed his Charge, Bobby Young, an Allied manager at the Tyson Foods site, saw an individual holding a beer bottle in the parking lot that Plaintiff was responsible for patrolling. Plaintiff's Dep. at 147. Mr. Young called a Security Professional who was working at the front desk and asked her to dispatch Plaintiff to the scene so that he could remove the individual from the property. *Id.* Ultimately, rather than waiting for Plaintiff to arrive, Mr. Young removed the individual from the property himself. *Id.* Subsequently, Plaintiff called back to the Security Professional at the front desk and stated that he did not see anyone with a beer bottle in the parking lot. *Id.* The Security Professional told Plaintiff that Mr. Young had called back and said "never mind. [Mr. Young] got him. Go back to what you're doing." *Id.*

Plaintiff was scheduled to work the next day, but he refused to work the shift. Bennett Dec., ¶ 15; Plaintiff's Dep. at 148. Pursuant to Allied policy, Ms. Bennett could have disciplined Plaintiff for refusing to work a scheduled shift. Bennett Dec., ¶ 15; Plaintiff's Dep. at 97, 148-150, Ex. 13 – Employee Handbook at Bates Stamps ALLIED 1244-1245. Ms. Bennett did not, however, issue any discipline. Bennett Dec., ¶ 15; Plaintiff's Dep. at 148-150.

The Security Professional who worked the shift in place of Plaintiff was already scheduled to work more than 40 hours that week. Bennett Dec., ¶ 16; Roan Dep. at 152. Accordingly, Plaintiff's refusal to work the shift would have resulted in Allied incurring additional labor costs for paying overtime rates. Bennett Dec., ¶ 16; Plaintiff's Dep. at 74-75. These additional costs would not be reimbursed by the customer and therefore would have reduced Allied's profit margin. *Id.* To avoid this erosion of the company's profit margin, Ms. Bennett asked Plaintiff to work a shift that the Security Professional who filled in for him was

9

scheduled to work during the same week. Bennett Dec., ¶ 17; Plaintiff's Dep. at 150. Plaintiff worked this additional shift. *Id.* Subsequently, Plaintiff voluntarily resigned his employment effective immediately. Bennett Dec., ¶ 18; Plaintiff's Dep. at 153-154.

Ms. Bennett frequently required other employees to cover shifts that they were not scheduled to work. Bennett Dec., ¶ 19. For example, in the situation above, when Plaintiff refused to work a scheduled shift on less than 24-hours' notice, Ms. Bennett required one of his co-workers to work the shift. Bennett Dec., ¶ 17; Plaintiff's Dep. at 150. As another example, Plaintiff recounted during his deposition that Ms. Bennett called another of Plaintiff's co-workers, Matt Kendrick, and instructed him to report to work immediately for an unscheduled shift. Plaintiff's Dep. at 135. Mr. Kendrick is a Caucasian male who, to Ms. Bennett's knowledge, has not engaged in protected activity. Bennett Dec., ¶ 23; Plaintiff's Dep. at 122.

Plaintiff has filed a Charge of race and sex discrimination against all 4 employers for whom he has worked during his adult life. Plaintiff's Dep. at 69. Additionally, he has filed 5 lawsuits in this Court bringing employment claims of race and sex discrimination: this lawsuit, 2 against Sonic (*Roan v. Sonic Restaurants, Inc., et al,* 3:12-cv-00982 and *Roan v. Ensminger, et al,* 3:17-cv-01177), and 2 against United Parcel Service (*Roan v. Mitchell, et al,* 3:17-cv-01178 and *Roan v. United Parcel Services, et al*, 3:19-cv-00291). Plaintiff's only employer that he has not sued is On Trac, and as of the date of Plaintiff's deposition, Plaintiff's Charge of discrimination relating to his employment at On Trac was pending. Plaintiff's Dep. at 68.

Plaintiff has also filed for bankruptcy in the United States Bankruptcy Court for the Middle District of Tennessee 5 times. Plaintiff's Dep., Ex. 2 at ALLIED 486-497. Relevant to this lawsuit, Plaintiff filed a Chapter 13 Bankruptcy on April 7, 2015, for which a final decree was issued on September 8, 2015. Plaintiff's Dep., Ex. 2 at ALLIED 492-493; *In re Roan*, Ch.

10

13 Case No. 3:15-bk-02333 (Bankr. M.D. Tenn. Sept. 8, 2015). Plaintiff filed another Chapter 13 Bankruptcy on June 25, 2015, and a final decree was issued on May 14, 2019. Plaintiff's Dep., Ex. 2 at ALLIED 494-497; *In re Roan*, Ch. 13 Case No. 3:15-bk-04354 (Bank. M.D. Tenn. May 14, 2019). Plaintiff did not disclose any of his potential or pending employment discrimination claims, including this one, in his bankruptcy petitions or in his schedule of assets, nor did he inform the Bankruptcy Court of the existence of potential claims. *See* Plaintiff's Ch. 13 Bankr. Petitions for the above-referenced bankruptcy filings.

Adrienne Cannon Boyd is an African American female who worked for Allied as a Flex Officer and did not have a specific assignment or guaranteed shifts. Bennett Dec., ¶ 21; Plaintiff's Dep. at 137-138. As discussed above, to compensate for the disadvantages of being a Flex. Officer, the Flex Officer position paid a higher rate than the rate paid to Security Professionals at Tyson Foods; specifically, Flex Officers received $12.00 per hour and Security Professionals assigned to Tyson Foods received either $10.25 or $10.50 per hour, depending on the assignment. Bennett Dec., ¶ 8; Plaintiff's Dep. at 139. Plaintiff never applied for a Flex Officer position. Bennett Dec., ¶ 20; Plaintiff's Dep. at 139.

Including Ms. Boyd, the Flex Officers at the Tyson Foods facility in Goodlettsville, Tennessee during Plaintiff's employment included 3 African American men, 2 Caucasian men, 4 African American women, and 1 Caucasian woman. Bennett Dec., ¶ 22; Plaintiff's Dep. at 140-142.

After Plaintiff's employment with Allied ended, Allied assigned Ms. Boyd to work as a Flex Officer at a site other than Tyson Foods. Bennett Dec., ¶ 21. Ms. Boyd declined, thus making herself ineligible to work as a Flex Officer. *Id.* Ms. Boyd instead took a position as a Security Professional at Tyson Foods. *Id.* When Ms. Boyd became a Security Professional, her

wage rate was reduced from $12.00 to the rate paid to Security Professionals at the site. *Id.*

## III.
## Applicable Law and Analysis

### A. Motion for Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56(c)(1) sets forth the requirement to support factual assertions as follows:

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

    **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

### B. Local Rule 56.01(c)

With regard to responses to the requisite Statement of Undisputed Facts filed contemporaneously in support of a Motion for Summary Judgment, Local Rule 56.01(c) provides:

> **c) Response to Statement of Facts.** Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed. *Each disputed fact must be supported by specific citation to the record.*

Although Plaintiff in the case at bar has filed documents that the undersigned construes as responses to the instant Motion and Statement of Undisputed Material Facts, those responses fail to comply with the Rules. Nevertheless, it would be inappropriate to grant Defendant's Motion solely on the ground that Plaintiff has failed to properly respond to its Motion or Statement of Undisputed Material Facts. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendant has met its burden under the appropriate summary judgment standards discussed below.

### C. Title VII of the Civil Rights Act of 1964

#### 1. Generally

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from

13

Case 3:18-cv-01342   Document 35   Filed 04/02/20   Page 13 of 20 PageID #: 1436

discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part

> It shall be an unlawful employment practice for an employer--
>
> 1. to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> 2. to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC Charge, or the claim can reasonably be expected to grow out of the EEOC Charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998), *citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a Charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52 L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC Charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC Charge if those allegations could reasonably be expected to grow out of the Charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir. 1971).

### 2. **Prima Facie Case of Discrimination**

In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff must prove that,

1. he is a member of a protected class;

2. he was qualified for his job and performed it satisfactorily;

3. despite his qualifications and performance, he suffered an adverse employment action; and

4. that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class.

*Johnson v. University of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (footnote added).

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated her because of her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See*

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then show that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that: (1) the stated reasons had no basis in fact; (2) the stated reasons were not the actual reasons; or (3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

### 3. Prima Facie Claim of Retaliation

An employer may not retaliate against an employee because he has opposed an unlawful employment practice, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a). A prima facie case of retaliation requires a plaintiff to demonstrate that:

1. he engaged in a protected activity;

2. the defendant knew that the plaintiff was exercising protected rights;

3. the plaintiff suffered an adverse employment action or was subjected to severe or pervasive retaliatory harassment by a supervisor; and

> 4. there was a causal connection between the protected activity and the adverse employment action or harassment.

*Little v. BP Exploration and Oil Co.,* 265 F.3d 357, 363 (6th Cir. 2001); *Morris v. Oldham Co. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Retaliation claims are evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 862 (6th Cir. 1997).

### D. Equal Pay Act

In order to state a claim under the Equal Pay Act, a plaintiff must show that an employer pays different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195-97, 94 S. Ct. 2223, 2228-29, 41 L. Ed.2d 1 (1974).

The Act establishes four exceptions where different payment to employees of opposite sexes is made pursuant to: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex. *Id.*

Once a plaintiff has established that the employer pays workers of one sex more than workers of the opposite sex for equal work, the burden shifts to the employer to show that the differential is satisfied under one of the Act's exceptions set forth above. *Id.*

### E. The Case at Bar

As an initial matter, it is undisputed that Plaintiff did not disclose any of his potential or pending employment discrimination claims, including this one, in his bankruptcy petitions or in his schedule of assets, nor did he inform the Bankruptcy Court of the existence of potential claims. *See* Plaintiff's Dep., Ex. 2 at ALLIED 486-497; *In re Roan*, Ch. 13 Case No. 3:15-bk-

02333 (Bankr. M.D. Tenn. Sept. 8, 2015); *In re Roan*, Ch. 13 Case No. 3:15-bk-04354 (Bank. M.D. Tenn. May 14, 2019). Accordingly, he is judicially estopped from bringing the claims he asserts in this lawsuit, and this action should be dismissed, for that reason.

Even if Plaintiff had properly disclosed his potential or pending employment discrimination claims, including this one, in his bankruptcy petitions or in his schedule of assets, Defendant's Motion should still be granted and this action dismissed because the undisputed facts demonstrate that Plaintiff cannot establish either a prima facie claim of race or sex discrimination in violation of Title VII or a sex discrimination claim under the Equal Pay Act. As discussed above, in order for Plaintiff to establish a prima facie claim of race or sex discrimination in violation of Title VII, Plaintiff must establish that: (1) he is a member of a protected class; (2) he was qualified for his job and performed it satisfactorily; (3) despite his qualifications and performance, he suffered an adverse employment action[4] and (4) he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class (*Johnson, supra*), and in order to state a claim under the Equal Pay Act, Plaintiff must show that Defendant paid different wages to employees of opposite sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions" (*Corning Glass Works, supra*). In the case at bar, the undisputed facts establish that Defendant treated Plaintiff the same as an African American female and Caucasian female when it changed all their pay to the same rate it was paying the other Security Professionals at the worksite. Bennett Dec., ¶¶ 12,

---

[4] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

13; Plaintiff's Dep. at 130, 143. As a result, the Plaintiff cannot show that he was treated differently than any similarly situated individuals outside his protected category.

With regard to Plaintiff's retaliation claim, as discussed above, in order for Plaintiff to establish a prima facie retaliation claim, Plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) Defendant knew that Plaintiff was exercising protected rights; (3) Plaintiff suffered an adverse employment action or was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. *BP Oil, supra*. Plaintiff cannot so establish. The actions Plaintiff claims to be retaliatory are simply that a supervisor asked him to check on someone in the parking lot that Plaintiff was monitoring, and that, after Plaintiff did not work one of his scheduled shifts, his manager told him that he would not be disciplined if he worked one of the shifts that the Security Professional who filled in for him was scheduled to work that week. Bennett Dec., ¶¶ 15-17; Plaintiff's Dep. at 147-152. It is undisputed that Ms. Bennett frequently required other employees to cover shifts that they were not scheduled to work, and that, when Plaintiff refused to work a scheduled shift on less than 24-hours' notice, Ms. Bennett required one of his co-workers to work the shift. Bennett Dec., ¶¶ 17, 19; Plaintiff's Dep. at 150. Neither of these actions constitute an adverse employment action or support a claim of constructive discharge.

Because Plaintiff is judicially estopped from bringing these claims, and because Plaintiff cannot establish a prima facie case of race or gender discrimination or retaliation under Title VII, and cannot establish a prima facie case of gender discrimination under the Equal Pay Act, Defendant is entitled to a judgment as a matter of law and this action should be dismissed with prejudice.

# VI.
# CONCLUSION

For the foregoing reasons, the undersigned finds that there are no genuine issues of material fact and that Defendant is entitled to a judgment as a matter of law on Plaintiff's claims under Title VII and the Equal Pay Act. The undersigned therefore recommends that Defendant's Motion for Summary Judgment (Docket No. 24) be GRANTED. The undersigned also notes that although Plaintiff titles Docket Numbers 25, 26, and 27 as Motions, they are in fact responses. Accordingly, to the extent that any recommendation is necessary thereon, the undersigned recommends that those "Motions" (Docket Nos. 25, 26, 27) be DENIED. In light of the foregoing, the undersigned recommends that this action be DISMISSED WITH PREJUDICE.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**